# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| BILLIE BARNETTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>Defendant. | Case No. 3:22-cv-01236-HES-JBT |

### DEFENDANT UNILEVER UNITED STATES, INC.'S OPPOSITION TO MOTION TO INTERVENE AND TRANSFER BY NON-PARTIES YVONNE BARNES, ET AL.

This is one of seven substantially-identical putative class actions pending against Unilever that allege economic harm from purchasing dry shampoo products that contained benzene.[1] The District of Connecticut was the first to acquire jurisdiction in September 2022, when *Little v. Unilever United States, Inc.*, was filed in the District of Connecticut.[2] After *Little* was filed, Unilever conducted its own internal analysis and voluntarily recalled select lots of dry shampoos due to potentially elevated level of benzene.[3] Several copycat putative class actions (including this case) were filed in the

---

[1] Unilever's Agreed Motion to Transfer this action to the District of Connecticut, filed December 1, 2022, identified six substantially-identical dry shampoo putative class actions then pending against Unilever. (Dkt. No. 10 at 3-4.) Another case was filed on December 14, 2022. *See* p. 7, *infra*.

[2] Case No. 3:22-cv-01189.

[3] Unilever, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene* (Oct. 17, 2022), https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-us-recall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/ ("Unilever Antiperspirant Recall").

1

wake of the recall. In response to motions to transfer under the first-to-file rule, two cases have already been transferred to the District of Connecticut with the plaintiffs' consent to proceed along with *Little*, and Plaintiff in this case has agreed to transfer. In another case, filed this past week, no motion to transfer has been filed yet.

The remaining two copycat cases (pending in the Northern Districts of Florida and Illinois) were filed by the same counsel representing the proposed intervenors here (hereinafter the "Barnes Antiperspirant Plaintiffs"), who oppose transfer of those cases to the District of Connecticut. Those counsel also represent the Barnes Antiperspirant Plaintiffs in a putative class action pending in the Northern District of Illinois related to an entirely different product (antiperspirant) and an entirely different putative class. *See Barnes et al. v. Unilever United States, Inc.*, No. 1:21-cv-06191 (N.D. Ill.). The Barnes Antiperspirant Plaintiffs do not allege that they purchased or used, much less were damaged by, the dry shampoo products at issue in this case. Nevertheless, they would like to see this dry shampoo case transferred to the Northern District of Illinois, so that it can proceed alongside their antiperspirant case, and have moved to intervene and transfer—despite the fact that Plaintiff in this case consents to transferring her case to the District of Connecticut.

There are numerous reasons to deny the Intervenors' motion. Three stand out. First and foremost, there is no good reason to allow the Intervenors to intervene in a putative class action in which they have no factual or legal interest and which involves a product they do not allege they used or were harmed by. Second, while all the dry shampoo class actions have substantively identical putative classes, there is no overlap

between the putative class of antiperspirant purchasers in *Barnes* and the putative class of dry shampoo purchasers here. Third, granting the Intervenors' motion would undermine, not advance, judicial efficiency. Other dry shampoo cases are already in the process of being consolidated in the District of Connecticut with the first-filed *Little* case. Granting the Barnes Antiperspirant Plaintiffs' motion would result in litigation on behalf of the same putative class proceeding in (at least[4]) two different federal district courts. Denying the motion would not prejudice the Barnes Antiperspirant Plaintiffs in their unrelated antiperspirant action. The Court should exercise its discretion to deny the motion.

## BACKGROUND

### The *Barnes* Antiperspirant Class Action

In 2021, varying levels of benzene was reportedly found in a number of different consumer products, from hand sanitizer to sunscreen, with recalls and litigation resulting. In November 2021, the pharmacy Valisure submitted a citizen petition to the U.S. Food & Drug Administration, detailing the results of its testing of over 100 samples of body spray products from 30 brands. According to Valisure, over half the tested lots had some detectible level of benzene—at least 0.1 parts per million. Included were four samples of Suave 24 Hour Protection aerosol antiperspirant deodorant, a Unilever product, which reportedly contained trace levels of benzene.[5]

---

[4] The Barnes Antiperspirant Plaintiffs' counsel also filed a dry shampoo case in the Northern District of Florida. Thus, it appears that the Barnes Antiperspirant Plaintiffs would have cases seeking to represent the same class of dry shampoo purchasers proceed in three different courts.

[5] *See* Valisure Citizen Petition on Benzene in Body Spray Products (Nov. 3, 2021).

While Unilever has reason to doubt Valisure's credibility,[6] it conducted an internal review which showed slightly elevated levels of benzene in some product samples and conducted a recall of the Suave antiperspirant.

In March 2022, Unilever recalled the affected Suave antiperspirant product and offered refunds to consumers.[7] Several putative class actions were filed by purchasers of the antiperspirant product, which were eventually consolidated in the *Barnes Antiperspirant* case after the first-filed case was dismissed. The putative nationwide class in *Barnes* is defined as:

> All persons who purchased one or more of Defendant's [Suave 24-hour Protection Powder aerosol antiperspirant and Suave 24-hour Protection Fresh aerosol **antiperspirant**

---

[6] Unilever's internal review found significant flaws with Valisure's analysis. Similarly, an FDA inspection of Valisure has also found significant flaws in its testing validity and regulatory compliance. *See* Letter from Jill P. Furman, Acting Director, Office of Compliance, Center for Drug Evaluation and Research, FDA to David Y.Y. Light, CEO, Valisure dated Dec. 5, 2022 (Exhibit A), https://www.fda.gov/media/163682/download. Also demonstrating Valisure's flawed testing practices, a federal judge in the Southern District of Florida overseeing one of the nation's largest multi-district litigations, related to the drug Zantac (ranitidine)—litigation prompted by Valisure's testing and FDA citizen petition—recently excluded the plaintiffs' general causation experts and granted summary judgment to defendants. The plaintiffs in the MDL had disclaimed any reliance on Valisure's testing for general causation because it was demonstrably unreliable. The court noted in its order that Valisure, in order to find very high levels of a potential carcinogen, used testing conditions entirely dissimilar to the human body (i.e., extremely high temperatures and levels of salt), which actually "created the very substance for which it was testing." *See* Omnibus Order on all Pending *Daubert* Motions and Defendants' Summary Judgment Motion at 3-6, 147-48, *In re: Zantac (ranitidine) Products Liability Litigation*, No. 9:20-md-02924, MDL No. 2924, ECF No. 6120 (Exhibit B); *see also* Editorial Board, *The Zantac Scare and Junk Science*, WALL STREET JOURNAL, Dec. 8, 2022 ("Valisure's role in the Zantac and other consumer lawsuits deserves more scrutiny. . . . The Valisure methods and plaintiff attorney suits look like a litigation scam.") (Exhibit C).

[7] FDA, *Unilever Issues Voluntary Nationwide Recall of Suave 24-Hour Protection Aerosol Antiperspirant Powder and Suave 24-Hour Protection Aerosol Antiperspirant Fresh Due to Presence of Slightly Elevated Levels of Benzene* (Mar. 30, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-nationwide-recall-suave-24-hour-protection-aerosol-antiperspirant-powder; Unilever Antiperspirant Recall, https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-us-recall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/..

4

> **products**] in the United States for personal or household use within any applicable limitations period.

*See Barnes* First Am. Consol. Class Action Compl ¶¶ 1, 119 (Exhibit D).

### The *Little* Dry Shampoo Action Is Filed in the District of Connecticut

On September 21, 2022, nine plaintiffs filed a complaint against Unilever in the District of Connecticut. *See Little* Class Action Compl. (Exhibit E). They allege that Valisure conducted testing for them[8] that purportedly detected trace levels of benzene in certain Unilever dry shampoo products sold under the Suave, TIGI, Tresemme, Dove, Nexxus, and Living Proof brands. *Id.* ¶ 1. They claim that Unilever allegedly deceived them by failing to disclose the presence or risk of benzene in these dry shampoo products. *Id*. They do not allege that they suffered any personal injury from exposure to benzene, only that they were "economically harmed" because the dry shampoo products were "worthless" due to the alleged benzene contamination. *Id.* ¶¶ 16, 89. The *Little* plaintiffs seek to certify and represent a nationwide class of:

> All persons in the United States who purchased any of the **Unilever Dry Shampoo Products** for personal, family or household use within the applicable statute of limitations.

---

[8] Valisure's actions at the outset of the *Little* case further highlight its lack of credibility. Despite serving as consultants for the *Little* plaintiffs (and before filing its recent citizen petition on benzene in other dry shampoo products), Valisure sent Unilever a proposed agreement under which it would share its testing data with Unilever, which would then be covered by a confidentiality agreement (*i.e.*, not included in its then-forthcoming citizen petition), in exchange for $1.25 million, plus $250,000 per month thereafter. *See* Email from Marty Sipple, attorney for Valisure, to Patrick Oot, attorney for Unilever, dated September 23, 2022, and attached draft agreement (Exhibit F). Unilever declined this "offer."

*Id.* ¶¶ 106-07 (emphasis added). The putative class in *Little* is substantively identical to the putative class in this case:

> All persons who purchased one or more of Defendant's [aerosol **dry shampoo products** manufactured and sold by Unilever under its brands: Dove, Nexxus, Suave, TIGI, and TRESemmé] in the United States for personal or household use within any applicable limitations period.

Class Action Compl. (Dkt. No. 1) ¶¶ 1, 76.

The *Little* plaintiffs allege that "Unilever designed, developed, and/or manufactured the Unilever Dry Shampoo Products primarily in Connecticut, where Unilever has maintained a substantial multi-decade presence, employing numerous individuals conducting the research and development of, and manufacturing and compliance operations for, its hair care products and particularly Unilever Dry Shampoo Products, including product engineers and scientists, regulatory and compliance specialists, and product designers." *Little* Class Action Compl. ¶ 19.

### Unilever Recalls Select Lots of Dry Shampoo Products

Less than a month later and based on its own investigation, Unilever voluntarily recalled select lot codes of certain dry shampoo products due to potentially elevated levels of benzene.[9] As noted in the recall, "Benzene is ubiquitous in the environment. Humans around the world have daily exposures to it indoors and outdoors from

---

[9] Unilever, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene* (Oct. 18, 2022), https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-us-recall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/; *see also* FDA, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene* (Oct. 21, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-us-recall-select-dry-shampoos-due-potential-presence-benzene.

multiple sources." *Id*. An independent health hazard evaluation showed that daily exposure to benzene in the recalled products at the level detected in testing would not be expected to cause adverse health consequences. *Id*. Unilever is offering reimbursement to customers who purchased dry shampoo products affected by the recall. *Id*.

## Copycat Class Actions Are Filed After the Recall

After Unilever's recall, a number of additional putative class actions (six so far) alleging economic injuries related to the recalled dry shampoo products were filed— including this case:

- *Rullo v. Unilever United States, Inc.*, No. 2:22-cv-06422 (D.N.J) (filed Nov. 2, 2022) – ordered transferred to District of Connecticut on Dec. 6, 2022 by agreement of the plaintiffs;

- *Sims v. Unilever United States, Inc.*, No. 1:22-cv-06140 (N.D. Ill.) (filed Nov. 4, 2022) – filed by counsel for the Barnes Antiperspirant Plaintiffs; pending motion to stay or transfer to District of Connecticut filed Nov. 16, 2022;

- *Barnette v. Unilever United States, Inc.*, No. 3:22-cv-01236 (M.D. Fla.) (filed Nov. 9, 2022) – this case – pending motion to transfer to District of Connecticut by agreement of Plaintiff filed on Dec. 1, 2022 (Dkt. No. 10);

- *Schriver v. Unilever United States, Inc.*, No. 1:22-cv-23706 (S.D. Fla.) (filed Nov. 11, 2022) – ordered transferred to District of Connecticut on Dec. 5, 2022 by agreement of the plaintiffs;

- *Simmons v. Unilever United States, Inc.*, No. 3:22-cv-23376 (N.D. Fla.) (filed Nov. 17, 2022) — filed by counsel for the Barnes Antiperspirant Plaintiffs; pending motion to stay or transfer to District of Connecticut filed Dec. 8, 2022; and

- *Loudenslager v. Unilever United States, Inc.*, No. 3:22-cv-01020 (M.D. La.) (filed Dec. 14, 2022) — recently filed; motion to stay or transfer to District of Connecticut not yet filed.

Plaintiff here consented to Unilever's motion to transfer this case to the District of Connecticut, which Unilever filed on December 1, 2022 (*See* Dkt. No. 10). Since then, the plaintiffs in *Rullo* and *Schriver* also consented to transfer to Connecticut, and those cases have been transferred. The *Loudenslager* case is newly filed and Unilever has yet to file a motion to transfer. The only two copycat cases in which Unilever has moved to transfer and the plaintiffs have not consented are the *Simmons* and *Sims* cases—both of which were filed by counsel for the Barnes Antiperspirant Plaintiffs. Like this case, Unilever has filed motions to stay or transfer the *Simmons* and *Sims* actions to the District of Connecticut. The court in *Little* has stayed the case in anticipation of receiving transfer of all of the copycat dry shampoo class actions. *See* Minute Entry, ECF No. 17, *Little v. Unilever United States, Inc.*, No. 3:22-cv-01189 (D. Conn. Nov. 29, 2022) (Exhibit G)

In an effort to avoid the consolidation of all the dry shampoo cases in Connecticut, the Barnes Antiperspirant Plaintiffs filed a motion to reassign *Sims*, a dry shampoo case filed by the Barnes Antiperspirant Plaintiffs' counsel and pending in the Northern District of Illinois, to the judge presiding over the *Barnes* antiperspirant case, under a local rule permitting reassignment of "related cases." The *Barnes* court denied the motion, which was based on arguments similar to those made in their motion here. *See* Minute Entry, ECF No. 83, *Barnes v. Unilever United States, Inc.*, No. 1:21-cv-06191 (N.D. Ill. Dec. 14, 2022) (Exhibit H).

The Barnes Antiperspirant Plaintiffs moved to intervene and to transfer this case to the Northern District of Illinois where *Barnes* is pending, rather than to the District of Connecticut, where the parties here agree this case belongs.

Unilever opposes the Barnes Antiperspirant Plaintiffs' motion. Neither intervention nor transfer to the Northern District of Illinois is appropriate. It is not justified under the law and would create confusion rather than efficiencies. The *Barnes* case involves a distinct putative class of purchasers, of different products, subject to different regulatory schemes, recalled at different times. The Court should deny the Barnes Antiperspirant Plaintiffs' motion, which would result in overlapping dry shampoo class actions pending in multiple federal district courts, and instead grant Unilever's agreed motion to transfer this dry shampoo case to the District of Connecticut (Dkt. No. 10), the court overseeing several of the dry shampoo cases (including the first-filed one).

## ARGUMENT

### I. THE COURT SHOULD DENY THE BARNES ANTIPERSPIRANT PLAINTIFFS' MOTION TO INTERVENE.

The Court should exercise its discretion to deny the Barnes Antiperspirant Plaintiffs' motion to intervene. The parties in this case have agreed to the transfer of this case to the District of Connecticut so it can proceed along with the other dry shampoo cases. The Barnes Antiperspirant Plaintiffs have no interest in this lawsuit— certainly not an interest that would trump the interests of the actual parties to the case—and their effort to intervene and have this case transferred to the Northern

District of Illinois is a transparent effort at judge-shopping for two copycat dry shampoo cases filed by their counsel. The Barnes Antiperspirant Plaintiffs would not be impacted by the dry shampoo cases being consolidated in the District of Connecticut because the *Barnes* case involves a different product, and there is no overlap between the putative classes.

"Under Rule 24(b), a court may exercise its discretion in granting permissive intervention only when '(1) a party's claim or defense and the main action have a question of law or fact in common and (2) the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.'" *Attix v. Carrington Mortg. Servs., LLC*, No. 1:20-CV-22183-UU, 2020 WL 9849821, at *3 (S.D. Fla. Oct. 13, 2020) (quoting *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005)). "Nonetheless, 'it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.'" *Id.* (quoting *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996)).

As a threshold issue, it is questionable whether the Barnes Antiperspirant Plaintiffs even meet the low threshold bar of having "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(2). At a very high level of generality, there are common issues of fact: both putative class actions allege benzene contamination, and both involve products manufactured by Unilever—albeit entirely different products. But if "common question of law or fact"

is defined this broadly, then intervention would be permissible in almost any case. In reality, these cases have very little in common beyond superficial similarities.

Even if the threshold requirement of Rule 24(b)(1)(2) were met, that merely means that intervention is *permissible*, not required. *E.g.*, *Attix v. Carrington Mortg. Servs., LLC*, No. 1:20-CV-22183-UU, 2020 WL 9849821, at *3 (S.D. Fla. Oct. 13, 2020) (declining to allow a plaintiff in another purportedly similar case to intervene to file a first-to-file rule motion to transfer) ("[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." (quoting *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996))). As the Southern District of Florida has noted, "[c]ourts routinely deny permissive intervention requests" in circumstances "where neither party want[s] to litigate in proposed intervenors' forum and proposed intervenors solely sought intervention based on perceived impairment to litigate parallel case." *Id.*

Here, as in *Attix*, both Unilever and Plaintiff agree that this case should be transferred to the District of Connecticut, where the first-filed case related to Unilever dry shampoo products was filed. Neither party in this case wants to litigate in the forum proposed by the Barnes Antiperspirant Plaintiffs, who do not allege that they ever purchased or used a single dry shampoo product, and who seek to represent a class of purchasers of antiperspirants, not dry shampoos. Unilever respectfully suggests that the Court should exercise its discretion to deny the Barnes Antiperspirant Plaintiffs' request for permissive intervention.

## II. THE COURT SHOULD DENY THE MOTION TO TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF ILLINOIS.

In response to Unilever's *agreed* motion to transfer this case to the court overseeing the first-filed dry shampoo putative class action, the Barnes Antiperspirant Plaintiffs ask this Court to transfer this case to the Northern District of Illinois, where a different class action, related to a different product, subject to a different recall, with an entirely different class of purchasers, is pending. Although the Barnes Antiperspirant Plaintiffs rely upon the first-to-file rule as purportedly supporting their motion, that rule does not apply to transfer this *dry shampoo* putative class action to the court in which an earlier-filed *antiperspirant* putative class action is pending. The speculative and superficial ways in which the cases might be similar are not sufficient for the Barnes Antiperspirant Plaintiffs' request.

"[T]he first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1196 (11th Cir. 2019) (quoting *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013)). "[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Collegiate Licensing*, 713 F.3d at 78 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)).

Courts in the Eleventh Circuit applying the first-to-file rule consider three key factors: (1) the chronology of the pending lawsuits; (2) the similarities of the parties; and (3) the similarities of the legal issues. *Toran v. Hyundai Motor Am.*, No. 8:20-CV-2669-WFJ-CPT, 2021 WL 252382, at *2 (M.D. Fla. Jan. 26, 2021) (citing *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, Case No. 8:10-cv-419-T-27EAJ, 2012 WL 515879, at *3 (M.D. Fla. Jan. 26, 2012); *Shapiro v. Hyper Healing, LLC*, Case No. 8:20-cv-1268-T-02CPT, 2020 WL 5095303, at *1 (M.D. Fla. Aug. 27, 2020).

"[I]n the context of class action lawsuits . . . it is the class, not the class representatives, that are relevant for purposes of the first-to-file rule." *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. C 10-3517 SI, 2011 WL 1399441, at *4 (N.D. Cal. Apr. 13, 2011)) (finding "there is significant overlap between the putative classes because the [one] proposed [] class is, by definition, a subset of the [other] proposed class"); *see also, e.g.*, *Alers v. Robinhood Fin. LLC*, No. 21-CV-61848, 2022 WL 2431522, at *2 (S.D. Fla. July 1, 2022) (finding that the parties were similar because "the plaintiffs in the instant [class] action are all included in the putative class in the California action"); *Kelly v. Gerber Prod. Co.*, No. 21-60602-CIV, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) (finding that the first-to-file rule applied based on a comparison of the putative classes); *Chapman v. Progressive Am. Ins. Co.*, No. 3:17-cv-102/MCR/CJK, 2017 WL 3124186, at *2 (N.D. Fla. July 24, 2017) (finding that the parties were similar because, if certified, "there would be overlap between the

classes."); *see also Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 WL 481184, at *7 (S.D. Fla. Feb. 16, 2022) (finding that the first-to-file rule applied to putative class actions on behalf of purchasers of the same product, even though there were slight differences in the causes of action and the applicable laws of different states). Whether a putative class "has been certified is irrelevant" to the application of the first-to-file rule. *Alers*, 2022 WL 2431522, at *3.

The first-to-file rule does not apply in the manner the Barnes Antiperspirant Plaintiffs request because the putative classes in the antiperspirant and dry shampoo litigations are entirely different, with no overlap, and because the legal and factual issues have only limited overlap.

The Barnes Antiperspirant Plaintiffs simply ignore critical differences between these cases and the products at issue. The antiperspirant and dry shampoo are entirely different, and were the subject of different recalls. The products are used differently and serve different purposes.

While the Barnes Antiperspirant Plaintiffs speculate that "[m]any court rulings, particularly summary judgment and *Daubert* Motions, will involve many of the same decisions given the applicability of overlapping regulations and science," Mot.at 7, they ignore that these products are subject to different regulatory schemes. Antiperspirant products are regulated by FDA as over-the-counter drugs, whereas dry shampoo is regulated as a cosmetic, a fact that may impact available legal defenses.

The Barnes Antiperspirant Plaintiffs assert that the alleged contamination in the different products "stem[s] from the same source (the propellant)." *Id.* at 1. But

Unilever's preliminary investigation reveals that the Suave antiperspirant and the dry shampoo products were made with different propellants and in different manufacturing facilities.

Perhaps most importantly, the putative class in *Barnes* is entirely distinct from and does not overlap with the putative class here.[10]  Courts look to whether "there is significant overlap between the putative classes." *Peterson*, 2015 WL 224750, at *2; *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The crucial inquiry is one of 'substantial overlap'"); *Lianne Yao v. Ulta Beauty Inc.*, No. 18-22213-CIV, 2018 WL 4208324, at *3 (S.D. Fla. Aug. 8, 2018) ("[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap." (quoting *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790-91 (6th Cir. 2016)).  The Barnes Antiperspirant Plaintiffs did not point to a single case where the first-to-file rule was applied to two class actions with no overlap in classes.

Finally, the Barnes Antiperspirant Plaintiffs argue that "[l]itigating this case separate and apart from the *Barnes* Action is a waste of judicial time and resources and could result in inconsistent rulings that are unfair to the parties." Mot. at 8.  It is actually the Barnes Antiperspirant Plaintiffs' proposed course that would waste judicial time and resources.  The *Little* case has already been filed in the District of Connecticut and the copycat dry shampoo cases are already being transferred there.

---

[10] To the contrary, as noted in Unilever's Agreed Motion (Dkt. No. 10), the putative class here does overlap with the putative class in *Little*, the first-filed dry shampoo case.

15

Granting the Barnes Antiperspirant Plaintiffs' motion would not stop that fact; it would only ensure that cases seeking to represent an identical class of purchasers of the same dry shampoo products will be litigated in both Connecticut and Illinois. By contrast, transfer of this case and other dry shampoo cases to be litigated in the District of Connecticut, while the Barnes Antiperspirant Plaintiffs litigate their antiperspirant case in the Northern District of Illinois, will have no adverse impact on them. The Barnes Antiperspirant Plaintiffs proffer no reason why potential inconsistent rulings would be "unfair" to them, nor is there any risk of inconsistent judgments since the classes have no overlap.

## CONCLUSION

For the reasons set forth above, Unilever respectfully asks the Court to deny the putative intervenors' motion to intervene and transfer.

Dated: December 18, 2022

Respectfully submitted,

By: /s/ *Daniel B. Rogers*
Daniel B. Rogers (Florida Bar No. 195634)
E-Mail: drogers@shb.com
Jennifer A. McLoone (Florida Bar No. 29234)
E-Mail: jmcloone@shb.com
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
T: (305) 358-5171

Sarah B. O'Rourke (Florida Bar No. 1003082)
E-Mail: sborourke@shb.com
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
T: (813) 202-7100

*Counsel for Defendant Unilever United States, Inc.*