# Exhibit F

Case 3:22-cv-01649-MPS   Document 13-6   Filed 12/18/22   Page 2 of 7

**From:** Marty Sipple <msipple@ausley.com>
**Sent:** Friday, September 23, 2022 3:14 PM
**To:** Oot, Patrick L. (SHB) <OOT@shb.com>
**Cc:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Mike Glazer <mglazer@ausley.com>
**Subject:** Unilever

**EXTERNAL**

Patrick,
Can you give me a call regarding the attached at your earliest convenience. My cell is 850-508-8324.
Thank you.



**Martin B. Sipple**
Florida Bar Board Certified in Business Litigation

Direct Dial: 850-425-5315|Fax: 850-222-7560
msipple@ausley.com
123 South Calhoun Street, Tallahassee, Florida 32301
ausley.com





Confidentiality Notice: This message may constitute a confidential attorney-client communication. It is not intended for transmission
to, or receipt by, any unauthorized persons. If you have received this communciation in error, please notify the sender by reply email
so that our address records can be corrected and then delete the email and all attachments from your system. Thank you.



September {insert date}, 2022

Client Name
Client Address

Dear XXX,

We are pleased to provide the following letter agreement (the "Agreement") memorializing the terms of the retention of ValisureCL, LLC, a Connecticut limited liability company ("Valisure") to provide services to {insert company}, as incorporated and registered in the United States ("Client").

**Scope of Work**

Under the terms of this Agreement, Valisure will work with Client, regarding the following (the "Services"):

- Sharing data on the benzene content of Client's aerosol consumer products, determined by Client's name being present on a can of aerosol consumer product ("ACP"), to be identified by Valisure by unique product brand ("Brand"), UPC number and lot number in a report to the Client upon execution of this agreement and receipt of the first payment (the "Products"), based on Valisure's proprietary database.
- Providing and discussing Valisure's current validated methods of analysis related to the Products.
- Engaging in method development and validation of new or modified methodologies for analysis of benzene in ACPs specific to Client's unique ACPs.
- Assisting in the investigation of potential benzene contamination in Client's ACPs and/or raw materials used to manufacture Client's ACPs.
- Performing up to 50 analytical tests per month using technologies such as: GC-MS, HPLC or SIFT-MS as to be mutually agreed by Client and Valisure.
- Engaging in mission-aligned advocacy work related to quality and safety of consumer products, meeting and exceeding standards for consumers, supply chain security and resiliency, and similar topics.
- Sharing of any potential future data as it relates to Client's ACPs that Valisure is considering for public disclosure, not less than 10 business days before a public disclosure, if any.

Valisure will participate in scheduled conference calls and meetings with you and your team related to the above matters.



**Engagement Terms**

I will serve as your principal point of contact, though additional team members will also work on this matter as well.

The term of this Agreement shall extend from the date that this Agreement is executed by Client for six (6) months (the "Term"). Upon expiration of this Agreement, Valisure shall cease performing the Services and Client shall promptly pay any remaining balance for the Services and any related charges associated therewith.

In consideration of our Services, Client agrees to pay Valisure a first payment of $1,250,000.00 due upon execution of the Agreement. Ongoing payments for Services will be billed monthly at the rate of $250,000.00 per month paid on the monthly anniversary of the execution of this Agreement. In addition, our billing statements will include any charges incurred by Valisure while providing Services.

Upon Client's review of Valisure's Services, Client may elect to make efforts to remove certain ACPs from being available in the consumer market which includes some or all of the Brands identified by Valisure in the list of Products, and inform Valisure in writing of such efforts and the Brands that are affected ("Withdrawal"). For the avoidance of doubt, execution of this Agreement does not obligate Client to make a Withdrawal. Valisure will consider all Valisure's data regarding Client's Brand(s) in a Withdrawal to be Confidential Information, as defined below, under this Agreement. Valisure agrees not to publish any report that includes Client's Products during the Term of this Agreement. For the avoidance of doubt, for any Brand that Client does not make a Withdrawal by the end of the Term, all Valisure's data and insights on Client's Products related to such Brand that is not included in the Withdrawal will not be considered Confidential Information under this Agreement and Valisure shall have the right, but not the obligation, to publish such data and insights.

**General Terms**

Client agrees to provide Valisure with all information reasonably necessary regarding the Products or ACPs to allow Valisure to perform its Services. Client represents and warrants that the information provided to Valisure shall be complete and accurate and Client further recognizes that Valisure shall be entitled to rely on the Client's representation as to the completeness and accuracy of such information. Client acknowledges and agrees that Valisure is not a Good Manufacturing Practice ("GMP") compliant laboratory and does not offer any GMP services, or any services for use for regulatory purposes. Valisure does not provide legal, regulatory, or GMP services. Legal, regulatory, and GMP services shall be provided to the Client by the Client's legal, regulatory, and GMP professionals.



**Intellectual Property**

Client acknowledges and agrees that the Services provided by Valisure are accomplished using significant proprietary intellectual property including inventions, know-how, trade secrets, trademarks, copyrights, algorithms, and data (collectively, the "Valisure IP"). Client does not and will not have or acquire under or in connection with this Agreement or its receipt of the Services, any ownership interest in the Valisure IP or in any modifications, improvements, or enhancements thereto and Valisure is and will remain the sole and exclusive owner of all right, title, and interest in and to the Valisure IP and any modifications, improvements, or enhancements thereto.

**Confidentiality**

From time to time during the Term of this Agreement, either party (as the "Disclosing Party") may disclose or make available to the other party (as the "Receiving Party"), non-public proprietary and confidential information of Disclosing Party ("Confidential Information"). "Confidential Information" does not include any information that: (i) is or becomes generally available to the public or a part of the public domain other than as a result of Receiving Party's breach of this Section 5; (ii) is or becomes available to Receiving Party on a non-confidential basis from a third- party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information; (iii) was in Receiving Party's possession prior to Disclosing Party's disclosure hereunder; or (iv) was or is independently developed by Receiving Party without using any Confidential Information. For the avoidance of doubt, any product which has been assigned a national drug code, a lot number or similar registration, whether currently or at any time has been for sale or otherwise on-market, and Valisure acquires it through lawful means, is considered part of the public domain and any analysis or insight of any kind derived from such product is not considered "Confidential Information" under this Agreement and Valisure's perpetual right to use and disclose such analysis or insight shall not be infringed in any way by this Agreement; provided, however, that the Parties will abide by any obligations contained in the Engagement Terms section. Notwithstanding the foregoing, any information, test results, or chemical composition analysis or evaluations regarding products or materials which have been directly provided by the Client to Valisure, and vice versa, shall be considered "Confidential Information" under this Agreement and the Parties will ensure to hold it in strict confidence. The terms, but not the existence, of this Agreement are Confidential Information of both parties. The Receiving Party shall: (a) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care; (b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement; and (c) not disclose any such Confidential Information to any person or entity, except to the Receiving Party's



representatives who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement.

If the Receiving Party is required by applicable law or legal process to disclose any Confidential Information, prior to making such disclosure and unless prohibited by applicable law, it shall use commercially reasonable efforts to notify the Disclosing Party of such requirements to afford the Disclosing Party the opportunity to seek, at the Disclosing Party's sole cost and expense, a protective order or other remedy.

**Indemnification**

Client shall defend, indemnify, and hold harmless Valisure from and against all claims, suits, proceedings, actions, losses, liabilities, damages, costs, and expenses (including without limitation, reasonable attorneys' fees) (a) relating to the use of the Services and any decisions or analyses made by Client or others using the Services; (b) resulting from any unauthorized use or disclosure of the Services.


**Limitation of Liability**

While Valisure uses reasonable efforts to provide the Services to the Client, Valisure shall not be liable for any failure or inability to provide the Services due to any event, condition or circumstances beyond Valisure's reasonable control. Except in the case of Valisure's gross negligence, or intentional misconduct, Valisure will not in any way be liable to the Client or any other person for any inaccuracies, errors, omissions, delays, damages, claims, liabilities or losses, regardless of cause, in or arising from the use of the Services.

IN NO EVENT SHALL VALISURE'S AGGREGATE LIABILITY ARISING OUT OF OR BASED UPON THIS AGREEMENT REGARDLESS OF THE FORM IN WHICH ANY LEGAL OR EQUITABLE ACTION MAY BE BROUGHT, INCLUDING WITHOUT LIMITATION, ANY ACTION IN TORT OR CONTRACT, EXCEED THE SUM OF FIFTEEN PERCENT (15%) OF ALL FEES PAID BY CLIENT PURSUANT TO THIS AGREEMENT FOR THE SIX (6) MONTH PERIOD PRECEDING THE CLAIM. IN NO EVENT SHALL VALISURE BE LIABLE FOR LOSS OF PROFITS, PUNITIVE, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES ARISING OUT OF OR RELATING TO CLIENT'S USE OF OR INABILITY TO USE THE SERVICES OR OTHERWISE UNDER THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT VALISURE HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREEMENT OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

**Assignment**
Neither this Agreement nor any rights or obligations hereunder, in whole or in part, are



assignable by either Party without the prior written consent of the other Party; and any attempt to assign the rights, duties or obligations under this Agreement without such consent shall be a breach of this Agreement and be null and void.

**Non-exclusivity**
The Client acknowledges that Valisure and its affiliates are in the business of providing services to others. Without limiting Valisure's obligations regarding Client's Confidential Information, nothing herein contained shall be construed to limit or restrict Valisure in conducting business with, providing services to, or otherwise rendering advice to any third party.

If the terms described above are satisfactory to you, please so indicate by signing a copy of this letter and returning the signed copy to my attention.

Very truly yours,

Jill K. Nailor, R.Ph.
Executive Vice President
Valisure, LLC


Agreed and Accepted on

By:

Title: